## UNITED STATES DISTRICT COURT     EASTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| PATRICIA MITCHELL, DR. RONNIE MITCHELL, and KIERRA MITCHELL, | § § § | |
| Plaintiffs, | § § | |
| *versus* | § § | CIVIL ACTION NO. 1:05-CV-195 |
| BEAUMONT INDEPENDENT SCHOOL DISTRICT, DR. CARROL A. THOMAS in His Capacity as Superintendent of BISD, MEGAN COBB Individually and in Her Capacity as Teacher, Marketing Education Coordinator, and DECA Advisor, OFFICER ABC in His Capacity as Campus Police Officer at West Brook High School, and OFFICER KEN HOBBS, | § § § § § § § § § § | |
| Defendants. | § § | |

### MEMORANDUM AND ORDER

Pending before the court is Defendants Beaumont Independent School District ("BISD"),

Dr. Carrol A. Thomas ("Dr. Thomas"), Megan Cobb ("Ms. Cobb"), and Officer Kenneth Marvin

Hobbs ("Officer Hobbs"), and all other unidentified parties' (collectively "Defendants") Motion

for Summary Judgment (#39). Defendants seek summary judgment on Kierra Mitchell ("Kierra"),

Dr. Ronnie Mitchell ("Dr. Mitchell"), and Patricia Mitchell's ("Mrs. Mitchell") (collectively

"Plaintiffs" or "the Mitchells") federal civil rights claims under the Fifth and Fourteenth

Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C.

§ 1983, as well as state law claims for defamation and intentional infliction of emotional distress

("IIED"). Having reviewed the pending motion, the submissions of the parties, the pleadings, and

the applicable law, the court is of the opinion that summary judgment is warranted on Plaintiffs'

federal claims and that their state law claims should be dismissed without prejudice.

I.     Background

       During the 2004–2005 school year, Kierra was classified as a senior at West Brook High

School ("West Brook") in the BISD.  Kierra participated in West Brook's Co-operative Student

Employment Program ("Co-op"), which provides students the opportunity to attend classes for

half the school day and to work in a business environment for the remainder of the school day.

Initially, Kierra worked as an intern at the Southeast Texas Medical Associates West End Medical

Plaza ("SETMA West"), under the direct supervision of Elaine Potts.  Shortly after the school

year began, Kierra transferred to the SETMA College Street branch ("SETMA II"), where her

father, Dr. Mitchell, practiced as a physician.  During her time at SETMA II, Carrie Evans ("Ms.

Evans"), the Medical Records Supervisor, served as Kierra's direct supervisor.

       Ms. Cobb is the Co-op teacher, the Marketing Education Coordinator, and the Distributive

Education Clubs of America Advisor at West Brook.  At the beginning of the semester, Ms. Cobb

informed her Co-op students that they would be required to turn in an employer evaluation form

signed by their direct supervisor by October 26, 2004.  Ms. Cobb warned the class that a late

submission of an employer evaluation form would result in a grade of zero for that portion of the

assignment.  Ms. Cobb testified that when Kierra began her participation in the Co-op program,

she advised Kierra that supervision by her father was impermissible.

       On October 26, 2004, Kierra failed to submit an employer evaluation form signed by Ms.

Evans during Co-op class.  Ms. Cobb directed Kierra to have the employer evaluation form

completed and turned in before the end of the school day.  Believing that he had the authority to

do so, Dr. Mitchell signed the evaluation form in lieu of Ms. Evans to ensure that Kierra did not turn in the form late and consequently receive a grade of zero.  That afternoon, Kierra placed the evaluation form bearing her father's signature under Ms. Cobb's classroom door.

Ms. Cobb became concerned that Kierra had violated Co-op policy by submitting an employer evaluation form signed by her father.  Ms. Cobb called Ms. Evans to verify that Dr. Mitchell had signed Kierra's evaluation form.  Upon confirming Dr. Mitchell's signature, Ms. Cobb scheduled a meeting with Ms. Evans to discuss Kierra's evaluation form.  During their meeting, they discussed Kierra's employment performance at SETMA II, and Ms. Evans filled out an employer evaluation form.  Plaintiffs were not present at this meeting, but they allege that Ms. Cobb made defamatory remarks to Ms. Evans, stating that Dr. Mitchell and Kierra's actions surrounding the evaluation form were deceptive and dishonest.

The next day, Ms. Cobb spoke with Kierra about her employer evaluation form.  Ms. Cobb again informed Kierra that working with a relative and submitting an employer evaluation form with her father's signature violated Co-op employment policy.  At that time, Ms. Cobb told Kierra that she would likely forfeit part of her grade in the class, that she had to change employment within ten days or risk expulsion from the Co-op program, and that she could not attend a school field trip taking place two days later.  Further, Ms. Cobb directed Kierra to speak with Mike Waidley ("Mr. Waidley"), the West Brook Vocational Counselor, concerning her employer evaluation form.  The meeting between Kierra and Mr. Waidley occurred during her Co-op class, which left her ten minutes to complete an examination being administered that day. Kierra completed the examination in the time remaining and received a grade of seventy.

3

Later that morning, Dr. Mitchell called Mrs. Mitchell and told her that Kierra was troubled because she feared being expelled from the Co-op program.  Mrs. Mitchell went to West Brook to speak with Mr. Waidley about the escalating situation in Kierra's Co-op class.  Mrs. Mitchell entered the school and spoke with Ms. Cobb in her classroom before meeting with Mr. Waidley.  At the conclusion of their meeting, Ms. Cobb contacted the West Brook receptionist to inform her that her classroom had been disrupted by an upset parent.  Mrs. Mitchell claims, however, that during their encounter, Ms. Cobb acted belligerently and became harsh, while she herself remained calm and courteous.

After meeting with Mr. Waidley, Officer Hobbs allegedly called Mrs. Mitchell into a nearby office.  Officer Hobbs is employed by the Beaumont Police Department and is assigned to West Brook as a campus police officer.  Officer Hobbs informed Mrs. Mitchell that he had been summoned because of the encounter outside Ms. Cobb's classroom.  Additionally, he advised Mrs. Mitchell that entering West Brook without a visitor's pass and disrupting a classroom may constitute Class C misdemeanors.  Subsequently, Officer Hobbs escorted Mrs. Mitchell off the West Brook campus.

On November 1, 2004, Ms. Cobb called Kierra into her office.  Acting upon the advice of her parents, Kierra refused to meet one-on-one with Ms. Cobb.  As a result, Ms. Cobb disciplined Kierra for insubordination, recording the incident in her student folder.

After these events, Dr. and Mrs. Mitchell requested that Kierra be reassigned to a different Co-op class with another teacher.  On November 2, 2004, West Brook transferred Kierra to Kathy Martin's ("Ms. Martin") Co-op class.  Plaintiffs allege that shortly after Kierra's reassignment, Ms. Martin "called Kierra into her office, and read her the riot act, accusing her of having an

4

attitude, advising her that she was skating on thin ice, and warning her that if she did not change her ways she would be kicked out of the Co-op program."

On November 2, 2004, Plaintiffs met with Dr. Rodney D. Cavness ("Dr. Cavness"), Principal of West Brook, Frank Brocato ("Mr. Brocato"), an Assistant Principal of West Brook, Mr. Waidley, Ms. Cobb, and Ms. Martin.  The meeting focused on Kierra's experiences in the Co-op program and, specifically, the employer evaluation form signed by Dr. Mitchell as well as Kierra's grades.  During this meeting, Ms. Martin apologized for her prior comments to Kierra.

Ms. Cobb wrote a memorandum to Plaintiffs on November 3, 2004.  The memorandum explained Kierra's Co-op grade, referred to the October 26 meeting between Ms. Evans and Ms. Cobb as amiable and pleasant, yet stated that the circumstances surrounding Kierra's employer evaluation form were deceptive and dishonest, and claimed that Ms. Evans gave Kierra a poor job performance evaluation.  Ms. Cobb wrote a second letter to Plaintiffs further explaining West Brook's grading policies and Kierra's Co-op grade.

Dr. and Mrs. Mitchell made multiple requests for copies of Kierra's examinations and other graded materials in order to verify the objectivity of Ms. Cobb's grading.  The Mitchells claim that they were given only a copy of her October 27 examination.  Dr. Cavness informed the Mitchells that some of the requested class materials no longer existed.  West Brook, however, provided the Mitchells with a full grading analysis, demonstrating how Ms. Cobb calculated Kierra's grade.  Kierra received a ninety-four for the first six-weeks grading period and a sixty-nine for the second six-weeks grading period.  Ms. Cobb stated that for the second six-weeks, Kierra's "grade would have been low forties had it been figured to include the zero grade on the evaluation submitted as filled out by the student's father.  The grade was set at sixty-nine to allow

student opportunity for passing the semester." Defendants claim, and Plaintiffs do not dispute, that Kierra ultimately received an overall grade of "A" in the Co-op class.

The Mitchells sent multiple letters to BISD and West Brook administrators expressing their dissatisfaction with Kierra's treatment in the Co-op program. Plaintiffs claim that Ms. Cobb retaliated against Kierra through her grading of the October 27 examination because she submitted the evaluation form containing Dr. Mitchell's signature. Additionally, Plaintiffs contend that they were unaware that it was against Co-op employment policy for Kierra to work with her father or for him to sign her evaluation form. The Mitchells allege that Kierra was treated unfairly compared to certain non-African-American students in the Co-op program, maintaining that other students have worked with family members without being subjected to any disciplinary action. Further, they contend that BISD violated their constitutional rights by not responding to their grievances.

On November 30, 2004, Dr. Cavness sent Dr. and Mrs. Mitchell a letter addressing their concerns on behalf of BISD; he extended "a sincere apology for any inconvenience you and Kierra have experienced during this situation." In January 2005, Plaintiffs voiced their complaints about Kierra's grade and subsequent treatment in the Co-op program at a BISD Board of Trustees ("BISD Board") meeting. Further, Dr. Cavness and Kierra met twice during the spring semester to discuss her Co-op grade. Ultimately, Dr. Cavness decided not to modify Kierra's Co-op grade. Kierra completed the year in the Co-op program, graduated from West Brook on time, and is now attending Clark Atlanta University.

Plaintiffs instituted this action on March 11, 2005, alleging violations of the Fifth and Fourteenth Amendments to the United States Constitution, federal civil rights claims under 42

U.S.C. § 1983, and state law claims for defamation and IIED. Defendants now seek summary judgment on all of Plaintiffs' claims.

II.   Analysis

A.   Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The parties seeking summary judgment bear the initial burden of informing the court of the basis for their motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which they believe demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006); *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005); *Martinez v. Schlumberger, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003); *Terrebonne Parish Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 877 (5th Cir. 2002). Where the defendants move for summary judgment on the basis of an affirmative defense and, thus, bear the ultimate burden of persuasion, they "must adduce evidence to support each element of [their] defenses and demonstrate the lack of any genuine issue of material fact with regard thereto." *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir. 1999), *cert. denied*, 528 U.S. 1160 (2000) (citing *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1074 (5th Cir.), *cert. denied*, 522 U.S. 915 (1997)); *see Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). To warrant

judgment in their favor, the movants "'"must establish beyond peradventure *all* of the essential elements of the defense."'" *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003) (emphasis in original) (quoting *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002) (quoting *Fontenot*, 780 F.2d at 1194)).

"A fact is '*material*' if it '*might affect* the outcome of the suit under governing law.'" *Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001) (emphasis in original) (quoting *Anderson*, 477 U.S. at 248); *see Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005); *Harken Exploration Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 (5th Cir. 2001); *Merritt-Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir. 1999); *Burgos v. Southwestern Bell Tel. Co.*, 20 F.3d 633, 635 (5th Cir. 1994). "An issue is '*genuine*' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan*, 246 F.3d at 489 (emphasis in original). Thus, a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord EMCASCO Ins. Co. v. American Int'l Specialty Lines Ins. Co.*, 438 F.3d 519, 523 (5th Cir. 2006); *Cooper Tire & Rubber Co.*, 423 F.3d at 454; *Harken Exploration Co.*, 261 F.3d at 471; *Merritt-Campbell, Inc.*, 164 F.3d at 961. The moving parties, however, need not negate the elements of the nonmovants' case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005); *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

Once a proper motion has been made, the nonmoving parties may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 322 n.3

(citing FED. R. CIV. P. 56(e)); *Anderson*, 477 U.S. at 256; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.11 (1986); *EMCASCO Ins. Co.*, 438 F.3d at 523; *Smith ex rel. Estate of Smith v. United States*, 391 F.3d 621, 625 (5th Cir. 2004); *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003); *Rushing*, 185 F.3d at 505.   "[T]he court must review the record 'taken as a whole.'"   *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (quoting *Matsushita Elec. Indus. Co.*, 475 U.S. at 587); *see Riverwood Int'l Corp. v. Employers Ins. of Wausau*, 420 F.3d 378, 382 (5th Cir. 2005).   All the evidence must be construed "in the light most favorable to the non-moving party without weighing the evidence, assessing its probative value, or resolving any factual disputes."   *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir. 1996); *see Reeves*, 530 U.S. at 150; *Lincoln Gen. Ins. Co.*, 401 F.3d at 350; *Smith ex rel. Estate of Smith*, 391 F.3d at 624; *Malacara*, 353 F.3d at 398; *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003); *Harken Exploration Co.*, 261 F.3d at 471; *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir.), *cert. denied*, 534 U.S. 951 (2001). The evidence of the nonmovants is to be believed, with all justifiable inferences drawn and all reasonable doubts resolved in their favor.   *See Palmer v. BRG of Ga., Inc.*, 498 U.S. 46, 49 n.5 (1990) (citing *Anderson*, 477 U.S. at 255); *Shields v. Twiss*, 389 F.3d 142, 150 (5th Cir. 2004); *Martin*, 353 F.3d at 412; *Martinez*, 338 F.3d at 411; *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 507 (5th Cir.), *cert. denied*, 540 U.S. 815 (2003); *Chaplin*, 307 F.3d at 372.   The evidence is construed "in favor of the nonmoving party, however, only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999); *accord Boudreaux*, 402

F.3d at 540; *Little*, 37 F.3d at 1075 (citing *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Moreover, "'only *reasonable* inferences can be drawn from the evidence in favor of the nonmoving party.'" *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 469 n.14 (1992) (emphasis in original) (quoting *H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*, 879 F.2d 1005, 1012 (2d Cir. 1989)).  "If the [nonmoving party's] theory is . . . senseless, no reasonable jury could find in its favor, and summary judgment should be granted." *Id.* at 468-69. The nonmovants' burden is not satisfied by "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions," by speculation, by the mere existence of some alleged factual dispute, or "by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (citations omitted); *see Anderson*, 477 U.S. at 247-48; *Warfield*, 436 F.3d at 557; *Boudreaux*, 402 F.3d at 540; *Wallace*, 80 F.3d at 1047; *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996).  "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown*, 337 F.3d at 541; *see Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 332 (5th Cir. 2004); *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 577 (5th Cir. 2003); *Hugh Symons Group, plc v. Motorola, Inc.*, 292 F.3d 466, 468 (5th Cir.), *cert. denied*, 537 U.S. 950 (2002).

Summary judgment is mandated if the nonmovants fail to make a showing sufficient to establish the existence of an element essential to their case on which they bear the burden of proof at trial.  *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp.*, 477 U.S. at 322; *EMCASCO Ins. Co.*, 438 F.3d at 523; *Cutrera v. Board of Supervisors of La. State Univ.*, 429 F.3d 108, 110 (5th Cir. 2005); *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004).  "In such a

situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof

concerning an essential element of the nonmoving party's case necessarily renders all other facts

immaterial." *Celotex Corp.*, 477 U.S. at 322-23.

    B.    <u>The Civil Rights Act of 1871</u>

    The Civil Rights Act of 1871, 42 U.S.C. § 1983, creates a private right of action for

redressing the violation of federal law by those acting under color of state law.  *See Inyo County*

*v. Paiute-Shoshone Indians of the Bishop Cmty.*, 538 U.S. 701, 708 (2003); *Conn v. Gabbert*, 526

U.S. 286, 290 (1999); *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994); *Ballard v. Wall*, 413 F.3d

510, 518 (5th Cir. 2005):  It provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State . . . subjects, or causes to be subjected, any citizen of the
> United States or other person within the jurisdiction thereof to the deprivation of
> any rights, privileges, or immunities secured by the Constitution and laws, shall be
> liable to the party injured in an action at law, suit in equity, or other proper
> proceeding for redress . . . .

42 U.S.C. § 1983.  "Section 1983 'is not itself a source of substantive rights,' but merely provides

'a method for vindicating federal rights elsewhere conferred.'"  *Albright v. Oliver*, 510 U.S. 266,

271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *accord Graham v.*

*Connor*, 490 U.S. 386, 393-94 (1989); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816

(1985); *Hernandez ex rel. Hernandez v. Texas Dep't of Protective & Regulatory Servs.*, 380 F.3d

872, 879-80 (5th Cir. 2004); *Felton v. Polles*, 315 F.3d 470, 479 (5th Cir. 2002); *Jackson v. City*

*of Atlanta*, 73 F.3d 60, 63 (5th Cir.), *cert. denied*, 519 U.S. 818 (1996).

    There are three elements to establish liability in a § 1983 action.  *See Victoria W. v.*

*Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004) (citing *Bush v. Viterna*, 795 F.2d 1203, 1209 (5th

Cir. 1986)).  To prevail, the plaintiffs must show "(1) a deprivation of a right secured by federal

law (2) that occurred under color of state law, and (3) was caused by a state actor." *Id.*; *see American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999); *Blessing v. Freestone*, 520 U.S. 329, 340 (1997); *Daniels v. Williams*, 474 U.S. 327, 330 (1986); *Priester v. Lowndes County*, 354 F.3d 414, 420 (5th Cir.), *cert. denied*, 543 U.S. 829 (2004).    Section 1983 complainants may not simply rely on conclusory allegations to support their claims.  *See id.*; *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995).

Thus, for Plaintiffs to recover, they must show that Defendants deprived them of a right guaranteed by the Constitution or the laws of the United States.  *See Daniels*, 474 U.S. at 329-31; *Baker*, 443 U.S. at 139; *Hernandez*, 380 F.3d at 879-80; *Victoria W.*, 369 F.3d at 482; *Rosborough v. Management & Training Corp.*, 350 F.3d 459, 460 (5th Cir. 2003).  "[T]he first step in a § 1983 analysis is to identify the specific constitutional right involved."  *Oliver v. Scott*, 276 F.3d 736, 744 n.10 (5th Cir. 2002) (citing *Baker*, 443 U.S. at 140).  "'Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law.'"  *Victoria W.*, 369 F.3d at 482 (quoting *Baker*, 443 U.S. at 146); *see also Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 450 (5th Cir. 1994); *accord Town of Castle Rock v. Gonzales*, ___ U.S. ___, ___, 125 S. Ct. 2796, 2810 n.15 (2005).  Plaintiffs must also prove that the alleged constitutional or statutory deprivation was intentional or due to deliberate indifference—not the result of mere negligence.  *See Farmer v. Brennan*, 511 U.S. 825, 828-29 (1994); *Davidson v. Cannon*, 474 U.S. 344, 348 (1986); *Daniels*, 474 U.S. at 328; *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Hernandez*, 380 F.3d at 882.  The negligent deprivation of life, liberty, or property is not a constitutional violation.  *See McClendon v. City of Columbia*, 305 F.3d 314, 326 (5th Cir. 2002), *cert. denied*, 537 U.S. 1232 (2003); *Campbell v. City of San*

12

*Antonio*, 43 F.3d 973, 977 (5th Cir. 1995); *Fraire v. City of Arlington*, 957 F.2d 1268, 1276 (5th Cir.), *cert. denied*, 506 U.S. 973 (1992).  Moreover, to hold Defendants liable under the statute, Plaintiffs must adduce facts demonstrating Defendants' participation in the alleged wrong.  Section 1983 plaintiffs must not only establish a violation of one of their constitutional rights but "must also show a causal connection between the deprivation of that right and the actions of the defendant against whom relief is sought."  *Coggin v. Longview Indep. Sch. Dist.*, 337 F.3d 459, 472-73 (5th Cir.), *cert. denied*, 540 U.S. 1018 (2003); *see also Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999); *Murphy v. Kellar*, 950 F.2d 290, 292 n.7 (5th Cir. 1992).

C.    <u>Constitutional Claims</u>

The Mitchells allege that Defendants violated their procedural and substantive due process rights, equal protection rights, and privileges and immunities protected by the Fifth and Fourteenth Amendments to the United States Constitution.  Specifically, they assert that Defendants infringed on Kierra's constitutional rights when Ms. Cobb retaliated against her and "applied different standards to her than those applied to other students, created punishments and consequences that she never had applied to other students before, and used established BISD policy guidelines in a way that disfavored Kierra . . . ."  Additionally, Mrs. Mitchell claims that Ms. Cobb violated her constitutional rights by making a false report against her.  Further, she contends that Ms. Cobb's purportedly false report led to Officer Hobbs's threatening her with violations of state criminal law.  Plaintiffs maintain that Dr. Thomas:  intimidated and threatened Mrs. Mitchell; failed to review Dr. Cavness's response to the Mitchells' protests surrounding Kierra's experiences in the Co-op class; disregarded BISD's grievance process; permitted Kierra's graded materials to be

13

discarded; neglected to investigate whether Ms. Cobb retaliated against Kierra; violated her privacy rights; and did not reverse Ms. Cobb's and Dr. Cavness's decisions regarding Kierra's grades.

>1.  <u>Substantive Due Process</u>

The Due Process Clause of the Fourteenth Amendment provides:  "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law."  U.S. CONST. amend. XIV, § 1.  The United States Supreme Court has explained that "'[t]o determine whether due process requirements apply in the first place, we must look not to the "weight" but to the *nature* of the interest at stake.'"  *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979) (quoting *Board of Regents of State Colls. v. Roth*, 408 U.S. 564, 570-71 (1972)).  To possess a protected right, "'a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it.'"  *Id.* (quoting *Roth*, 408 U.S. at 577).

Substantive due process is the concept that there are certain rights so fundamental to our traditions of justice that, no matter what procedural guarantees the government affords, the government cannot abridge those rights.  *See Simi Invest. Co. v. Harris County*, 236 F.3d 240, 249 (5th Cir. 2000), *cert. denied*, 534 U.S. 1022 (2001).  A substantive due process violation may occur when the government deprives a person of a constitutionally protected life, liberty, or property interest under certain circumstances.  *See id.*  Where a governmental action limits a fundamental right, strict scrutiny is applied, and the governmental action will be upheld only if it is necessary to promote a compelling or overriding governmental interest.  *See Reno v. Flores*,

507 U.S. 292, 302 (1993); *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 288 (5th Cir. 2001); *see also Lozana-Castaneda v. Garcia*, 238 F. Supp. 2d 853, 858-59 (W.D. Tex. 2002) (citing *Washington v. Glucksberg*, 521 U.S. 702, 762 (1997)).  In all other cases, the rational basis test applies, and the governmental action will be upheld if it is rationally related to any conceivable legitimate end of government.  *See Glucksberg*, 521 U.S. at 721 (holding that only fundamental rights which are "deeply rooted in this Nation's history and tradition" qualify for anything other than rational basis scrutiny).

It is well recognized that individuals in the United States have a legal entitlement to a public education provided by the state free from impairment of protected liberties.  *See Wisconsin v. Yoder*, 406 U.S. 205, 216 (1972); *see also Ouimette v. Babbie*, 405 F. Supp. 525, 530 (D. Vt. 1975).  There is no right, however, to receive a public education on individualized terms and conditions prescribed by the student or parents.  *See id*.  Furthermore, the right to an education, while important, is not a fundamental right.  *See Kadramas v. Dickinson Pub. Schs.*, 487 U.S. 450, 458 (1988) (citing *Papasan v. Allain*, 478 U.S. 265, 284 (1986)); *see also Plyler v. Doe*, 457 U.S. 202, 223 (1982); *accord Jeffrey v. Board of Tr. of Bells ISD*, 261 F. Supp. 2d 719, 725 (E.D. Tex. 2003), *aff'd*, 96 F. App'x 248 (5th Cir. 2004) (citing *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35 (1973)).  Therefore, in this case, the events in question do not implicate any fundamental rights, and the challenged conduct need only pass rational basis scrutiny in order to satisfy constitutional concerns.  *See Wheeler v. Miller*, 168 F.3d 241, 249-50 (5th Cir. 1999).

Here, the Mitchells allege that "BISD failed to follow established policy and established arbitrary rules and procedures with the intent and purpose to disadvantage Plaintiff Kierra . . . ."

15

Specifically, Plaintiffs contend that Ms. Cobb violated Plaintiffs' substantive due process rights by arbitrarily enforcing an unwritten Co-op policy and by disciplining Kierra for these alleged infractions.  Conversely, Defendants argue that West Brook's unwritten policy prohibiting Co-op students from working with or being supervised by relatives facilitates the educational process, which is a legitimate governmental interest.  Ms. Cobb testified at deposition that the policy was adopted for the benefit of the student and the employer.  She explained that students who work with relatives endure "und[ue] strain . . . .  It either puts too much pressure on the student because they are either overly supervised, [the employer is] too strict on the student, or there's not enough supervision.  And that just creates problems."  As such, Ms. Cobb avers that the current policy avoids the myriad problems that may arise as a result of students working with relatives.  Plaintiffs allege that they were unaware of the Co-op policy preventing students from working with relatives or allowing relatives to sign the employer evaluation form.  Ms. Cobb testified, however, that at the beginning of the fall semester she informed the class of this policy and met one-on-one with Kierra and told her that "[y]ou can't work for your dad.  You can't be supervised by your dad."  Thus, because West Brook's policy was implemented to facilitate the educational process, which benefits the student as well as the employer, Ms. Cobb's enforcement of that policy and Dr. Thomas's responses to Plaintiffs' grievances arising from such actions pass the rational basis test.

Additionally, Mrs. Mitchell claims that Officer Hobbs violated her due process rights by threatening her with charging her with Class C misdemeanors without conducting a thorough investigation.  Although the pleadings are somewhat nebulous, it appears that Mrs. Mitchell's claim is rooted in her right to direct the education and upbringing of Kierra, as guaranteed by the Due Process Clause of the Fourteenth Amendment.  *See Pierce v. Society of Sisters*, 268 U.S.

16

510, 534 (1925); *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923).  The parties have not cited, nor

has the court located, any decision interpreting the Due Process Clause to create a parental right

of unfettered access to school property or facilities.  *See Buckley v. Garland Indep. Sch. Dist.*,

No. Civ.A. 3:04-CV-1321-P, 2005 WL 2041964, at *2 (N.D. Tex. Aug. 23, 2005); *see also*

*Rodgers v. Duncanville I.S.D.*, No. 3:04-CV-0365-D, 2005 WL 770712, at *2 (N.D. Tex. Apr.

5, 2005).  A variety of courts, however, have upheld school officials' authority to control

activities transpiring on school property.  *See id.*  This includes the barring of third parties,

including parents, from access to school property when it is necessary to maintain order and to

prevent disruptions to the educational environment.  *See id.*; *see also Chiu v. Plano Indep. Sch.*

*Dist.*, 339 F.3d 273, 283 (5th Cir. 2003) (recognizing a school's legitimate interest in maintaining

order and discipline on school grounds); *Lovern v. Edwards*, 190 F.3d 648, 655-56 (4th Cir.

1999) (rejecting the claim that school administrators must provide parents with "boundless access"

to school property); *Van Deelen v. Shawnee Mission Unified Sch. Dist.*, 316 F. Supp. 2d 1052,

1057 (D. Kan. 2004) (finding that parents do not have a constitutional right to enter a school);

*Ryans v. Gresham*, 6 F. Supp. 2d 595, 601 (E.D. Tex. 1998) (noting that "[a]n exhaustive review

of the case law pertaining to the constitutional right of parents to direct the education of their

children discloses no holding even remotely suggesting that this guarantee includes a right to

access to the classes in which one's child participates").

The record reflects that, during school hours on October 27, 2004, a West Brook

receptionist notified Officer Hobbs of a disruption involving an upset parent outside of Ms. Cobb's

classroom.  He responded to the alleged confrontation between Ms. Cobb and Mrs. Mitchell.

When he arrived on the scene, he saw Mrs. Mitchell and claims that she was not wearing proper

identification for West Brook visitors.  During their encounter, Officer Hobbs informed Mrs. Mitchell of pertinent laws regarding campus security.  Officer Hobbs neither arrested nor issued Mrs. Mitchell a citation; rather, he walked with her off West Brook's campus.  At deposition, Officer Hobbs testified that he did not recall many details surrounding the incident.  He stated that "usually, incidences that stand out are – are bad ones.  I – I would have to say it went pretty – pretty amicably.  I don't remember being ugly.  She wasn't ugly to me, I don't believe."

Officer Hobbs's advising Mrs. Mitchell of potential state law violations appears to promote the goal of maintaining order and preventing disruptions on West Brook's campus, a legitimate governmental interest.  *See Chiu*, 339 F.3d at 283; *see also Rodgers*, 2005 WL 770712, at *3. Further, there is no evidence that the conversation between Officer Hobbs and Mrs. Mitchell restricted her ability to oversee Kierra's education or her overall access to West Brook.  *See Pierce*, 268 U.S. at 534; *Buckley*, 2005 WL 2041964, at *3.  Mrs. Mitchell has not suffered a deprivation of a life, liberty, or property right.  *See Simi Invest. Co.*, 236 F.3d at 249. Consequently, Defendants' actions did not violate Plaintiffs' substantive due process rights, and summary judgment is proper with regard to those claims.

### 2. Procedural Due Process

Procedural due process claims require a two-part analysis:  (1) whether the plaintiff has a life, liberty, or property interest that is entitled to procedural due process protection; and (2) if so, what process is due.  *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982); *Roth*, 408 U.S. at 569-70; *see also Baldwin v. Daniels*, 250 F.3d 943, 946 (5th Cir. 2001); *Findeisen v. North E. Indep. Sch. Dist.*, 749 F.2d 234, 237 (5th Cir. 1984) (pointing out that in order to determine whether the plaintiff has presented a procedural due process claim, the court must

determine if the plaintiff was "deprived of a protected property interest and, if so, was the deprivation accomplished without adherence to due process minimums").   "The essential requirements of due process . . . are notice and an opportunity to respond.  The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985); *Helton v. Clements*, 832 F.2d 332, 337 (5th Cir. 1987) (citing *Loudermill*, 470 U.S. at 546); *see also Browning v. City of Odessa*, 990 F.2d 842, 844 (5th Cir. 1993) ("before dismissing [a public] employee, the employer need only provide the employee with written or oral notice of the charges raised against him, explain to the employee the nature of the evidence of those charges, and afford the employee an opportunity to respond") (citing *Helton*, 832 F.2d at 337); *Price v. Brittain*, 874 F.2d 252, 261 (5th Cir. 1989) (same) (citing *Glenn v. Newman*, 614 F.2d 467, 472 (5th Cir. 1980)).  Procedural due process does not require that plaintiffs be afforded all the procedural safeguards found in a "trial-type" hearing, and plaintiffs must allege specific insufficiencies in the process afforded them to prevail on a denial of due process claim.  *See Robison v. Wichita Falls & N. Tex. Cmty. Action Corp.*, 507 F.2d 245, 252 (5th Cir. 1975).

Public high school students possess due process rights while enrolled in school.  *See Wood v. Strickland*, 420 U.S. 308, 326 (1975).   In Texas, school attendance, subject to certain exceptions, is compulsory for individuals under the age of eighteen.  *See* TEX. EDUC. CODE ANN. § 25.085-25.087 (Vernon 2005).  As discussed above, education, "standing alone, while although of unquestioned importance, has not been recognized as a fundamental right arising directly under the federal constitution." *Jeffrey*, 261 F. Supp. 2d at 725 (citing *Rodriguez*, 411 U.S. at 35); *see also Kadramas*, 487 U.S. at 458 (citing *Papasan*, 478 U.S. at 284; *Plyler*, 457 U.S. at 223).

States must, however, "recognize a student's legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that Clause." *Goss v. Lopez*, 419 U.S. 565, 574 (1975); *Jeffrey*, 261 F. Supp. 2d at 725 (quoting *Goss*, 419 U.S. at 574).

Additionally, several Supreme Court decisions have established that parents possess a fundamental liberty interest to direct the education of their children. *See id.* at 726 (citing *Yoder*, 406 U.S. at 232-33; *Pierce*, 268 U.S. at 534-35; *Meyer*, 262 U.S. at 401). While the existence of this right is unquestioned, "recognizing or identifying a right is a far cry from defining and setting the parameters of that right." *Id.* The Due Process Clause protects the right to participate in the overall educational process, rather than the right to partake in individual components of that activity. *See Seamons v. Snow*, 84 F.3d 1226, 1235 (10th Cir. 1996) (explaining that "the innumerable separate components of the educational process . . . do not create a property interest subject to constitutional protection"); *see also Jeffrey*, 261 F. Supp. 2d at 725-26. Hence, "it is only when a student is excluded from the entire educational system that due process must be afforded." *Id.* at 726. Thus, parents do not have the right to control every component or aspect of a child's educational process. *See Seamons*, 84 F.3d at 1235; *see also Jeffrey*, 261 F. Supp. 2d at 725-26.

In the case at bar, the Mitchells claim that Ms. Cobb violated their due process rights by retaliating against Kierra for submitting an employer evaluation form signed by her father, threatening to remove Kierra from the Co-op program if she did not find alternative employment within ten days, applying different rules to Kierra than other students, and refusing to allow her

to attend the Co-op field trip.  Additionally, they allege that Ms. Cobb withheld Kierra's test papers and discarded other graded materials.  They also maintain that Ms. Cobb violated Mrs. Mitchell's due process rights by making a false report that she disrupted her class.  Further, they contend that Ms. Cobb's false report led to Officer Hobbs's threatening Mrs. Mitchell with violations of state criminal law.  Finally, Plaintiffs allege that Dr. Thomas condoned a pattern of violating BISD Board policy, retaliating against students, refusing parental review of student materials, and denying students and parents the opportunity to partake in BISD's grievance system.

Under state and federal law, Kierra had a legitimate right to receive a public education at West Brook.  *See Goss*, 419 U.S. at 574; *see also* TEX. EDUC. CODE ANN. § 25.001 (Vernon 2006) (establishing that "[a] person who is at least five years of age and under 21 years of age on the first day of September of any school year is entitled to the benefits of the available school fund for that year").  Kierra had no right, however, to receive a public education on special terms or conditions designated by herself or her parents.  *See Ouimette*, 405 F. Supp. at 530.  Kierra possessed neither a liberty nor property interest in participating in West Brook's Co-op program, her grade in the class, nor the manner in which Ms. Cobb conducted the class.  *See Jeffrey*, 261 F. Supp. 2d at 725, 726 & n.6.  Plaintiffs did not have a due process right to direct, to control, or to determine Kierra's curriculum at West Brook.  *See id.* at 727.  In this instance, Kierra was not excluded from the entire educational process.  *See id.* at 726.  Indeed, Kierra continued her involvement in the Co-op program throughout the remainder of the school year, received an "A" for the course, graduated from West Brook with her class, and went on to attend the university of her choice.

21

Nonetheless, the Mitchells were provided ample opportunity to express their dissatisfaction with the perceived ill treatment of Kierra in the Co-op program and Dr. Thomas's responses to their grievances.  For example, they met with Kierra's teachers, West Brook administrators and counselors, and voiced their complaints at a BISD Board meeting in January 2005.  Furthermore, Plaintiffs received two letters from Ms. Cobb explaining Kierra's grades and the events surrounding Kierra's employer evaluation form.  Plaintiffs concede that they received responsive letters from Dr. Thomas and Dr. Cavness in a timely fashion.  Further, both Dr. Cavness and Ms. Martin offered Plaintiffs apologies for their frustrations.  Finally, Dr. Cavness met with Kierra twice in the spring semester to discuss her Co-op grade.

In light of the Mitchells' lack of a life, liberty, or property interest in the specific administration of Kierra's education, Plaintiffs' procedural due process claims against Ms. Cobb, Officer Hobbs, and Dr. Thomas must fail.  Moreover, for the reasons discussed above, Mrs. Mitchell has failed to adduce evidence that she was deprived of any due process rights in connection with her encounter with Officer Hobbs.  Accordingly, summary judgment is warranted with regard to Plaintiffs' procedural due process claims.

3.   Equal Protection

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides:   "No State shall deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1.  "This is not a command that all persons be treated alike but, rather, 'a direction that all persons *similarly situated* should be treated alike.'" *Artway v. Attorney Gen.*, 81 F.3d 1235, 1267 (3d Cir. 1996) (emphasis in original) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)); *accord Plyler*, 457 U.S. at 216;

22

*Ford Motor Co. v. Texas Dep't of Transp.*, 264 F.3d 493, 510 (5th Cir. 2001); *Bryan v. City of Madison*, 213 F.3d 267, 276 (5th Cir. 2000), *cert. denied*, 531 U.S. 1145 (2001); *Mayabb v. Johnson*, 168 F.3d 863, 870 (5th Cir.), *cert. denied*, 528 U.S. 969 (1999); *Stefanoff v. Hays County*, 154 F.3d 523, 525-26 (5th Cir. 1998).  "'A violation of the equal protection clause occurs only when, *inter alia*, the governmental action in question classifies between two or more relevant persons or groups.'"  *Johnson v. Rodriguez*, 110 F.3d 299, 309 (5th Cir.), *cert. denied*, 522 U.S. 995 (1997) (quoting *Vera v. Tue*, 73 F.3d 604, 609-10 (5th Cir. 1996)); *see Mayabb*, 168 F.3d at 870; *accord Woodard v. Andrus*, 419 F.3d 348, 354 (5th Cir. 2005) (quoting *Rolf v. City of San Antonio*, 77 F.3d 823, 828 (5th Cir. 1996)).

"To state a claim of racial discrimination under the Equal Protection Clause and section 1983, the plaintiff 'must allege and prove that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent.'"  *Priester*, 354 F.3d at 424 (quoting *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001)).  A plaintiff's personal belief that she was subjected to discrimination, however genuine that belief may be, cannot form the basis for judicial relief.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (citing *Hornsby v. Conoco, Inc.*, 777 F.2d 243, 247 (5th Cir. 1985) (holding that the plaintiff "failed to offer any evidence other than her subjective belief . . . that she was terminated because of her sex"); *Elliott v. Group Med. & Surgical Serv.*, 714 F.2d 556, 564 (5th Cir. 1983), *cert. denied*, 467 U.S. 1215 (1984) (noting that "generalized testimony by an employee regarding his subjective belief that his discharge was the result of age discrimination is insufficient")); *see also Weber v. Holiday Inn*, 42 F. Supp. 2d 693, 699 (E.D. Tex. 1999) (finding that the plaintiff's subjective belief and speculation that she suffered racial

discrimination cannot form the basis for judicial relief).   "Conclusory statements . . . do not provide facts that will counter summary judgment evidence, and testimony based on conjecture alone is insufficient to raise an issue to defeat summary judgment." *Lechuga v. Southern Pac. Transp. Co.*, 949 F.2d 790, 798 (5th Cir. 1992).

In the present case, Plaintiffs claim that Kierra's treatment in the Co-op program differed from other similarly situated, non-African-American Co-op students and that Ms. Cobb's grading of Kierra stemmed from racial animus.   Plaintiffs maintain that "there are other non-Black students in the same Co-op program who are working with and/or being supervised by their relatives, with impunity."   Specifically, they claim that "in two other situations during [the fall 2004] semester, students either worked with relatives, or allowed non-supervisors to sign their time sheets, without getting into any trouble."   Plaintiffs proffer the affidavit of Priscilla Louis ("Ms. Louis") to show that at least one other student enrolled in Ms. Cobb's Co-op class "had a similar experience to Kierra."   Ms. Louis summarily states that "there was a misunderstanding regarding her [daughter Mersadez's] employment situation."   Despite this allegation, the affidavit is devoid of any information regarding the student's race and lacks details regarding her experience in the Co-op class.   Moreover, it appears that this student, whatever her race, received similar, rather than different, treatment to Kierra.   Plaintiffs state in a footnote to their response to Defendants' summary judgment, without any competent, supporting summary judgment evidence, that another student, Elizabeth, worked at her father's fast food franchise during the 2005–2006 school year.   Again, the record reveals no specifics or any information about the race of that student.   As a further contention that Kierra was treated differently than other Co-op students, Plaintiffs assert that her student profile folder is "a distinctively different color from the

other student [profile] folders." The significance of such a distinction is unclear, but the color of school supplies would not seem to implicate any federal constitutional rights. In any event, Plaintiffs' conclusory allegations are insufficient to show that similarly situated students not of her race were treated more favorably than Kierra or that any perceived unequal treatment stemmed from a discriminatory intent, as necessary to establish a constitutional violation.

Plaintiffs also complain that Ms. Cobb retaliated against Kierra by grading her examination in an overly harsh manner. They assert that Ms. Cobb responded to Kierra's submission of her employer evaluation form with her father's signature by lowering her grade and imposing unnecessary sanctions upon her. They allege that Ms. Cobb's conduct was borne out of racial animus towards Kierra. Ms. Cobb's responses, while perhaps inappropriate and rash, do not demonstrate a racially discriminatory intent to retaliate against Kierra. Moreover, as pointed out above, the employer evaluation form signed by Ms. Evans was subsequently substituted for the evaluation form signed by Dr. Mitchell, Kierra continued to participate in the Co-op program with the same employer, she received an "A" in the class, and there was no disruption of her graduation, all of which evidences a lack of any desire or intent to injure Kierra. Consequently, Plaintiffs have failed to produce probative evidence establishing that Kierra suffered disparate treatment from other similarly situated, non-black West Brook Co-op students or that Defendants' behavior was motivated by racially discriminatory animus, a necessary element for an equal protection claim.

Finally, Plaintiffs allege that Officer Hobbs violated Mrs. Mitchell's equal protection rights during her October 27, 2004, on-campus visit to West Brook when he purportedly informed her, without conducting an investigation, that she may have violated state criminal law. Officer Hobbs

25

testified that when he encountered Mrs. Mitchell in the hall, he did not think she had obtained a visitor's pass.  At that time, he advised her that disrupting a classroom during an instruction period and being on campus without a visitor's pass may constitute Class C misdemeanors.  At deposition, Officer Hobbs testified that West Brook has approximately 2500 students, and although he understood the importance of parental involvement in a student's education, "5000 parents can't just walk on campus at-will."  Officer Hobbs's actions, which appear to have been motivated by a concern for maintaining order at West Brook and for ensuring safety and the integrity of administrative procedures, are devoid of a racially pejorative meaning.  *See Chiu*, 339 F.3d at 283; *see also Rodgers*, 2005 WL 770712, at *3.  Moreover, there is no evidence that Mrs. Mitchell was treated differently than similarly situated, non-African-American parents visiting West Brook's campus.  Officer Hobbs neither arrested nor issued a citation to Mrs. Mitchell. Hence, without evidence that Defendants treated Mrs. Mitchell differently than similarly situated, non-black parents on West Brook's campus, Plaintiffs cannot establish an equal protection violation.

## 4.   Privileges and Immunities

Plaintiffs make broad, conclusory allegations that Defendants violated their privileges and immunities.  For example, they state in their response to Defendants' summary judgment motion: "Mrs. Mitchell claims that she was deprived of her rights under the Privileges and Immunities clause when [Officer] Hobbs threatened her under authority of his office with criminal prosecution when she had done nothing wrong on the West Brook High School campus."  It is unclear whether Plaintiffs are asserting violations of the Article IV Privileges and Immunities Clause or the Fourteenth Amendment Privileges and Immunities Clause, or both.

26

The Privileges and Immunities Clauses of Article IV and the Fourteenth Amendment guarantee certain privileges to citizens against infringement by state government. *See Saenz v. Roe*, 526 U.S. 489, 503 n.15 (1999); *see also Supreme Court of Va. v. Friedman*, 487 U.S. 59, 64 (1988). Article IV provides: "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several states." U.S. CONST. art. IV, § 2. This clause precludes a state from discriminating against nonresidents. *See Austin v. New Hampshire*, 420 U.S. 656, 660-61 (1975). The Privileges and Immunities Clause of Article IV prohibits any distinctions in law between citizens of one state and citizens of other states if those distinctions are unreasonable. *See Baldwin v. Fish & Game Comm'n of Mont.*, 436 U.S. 371, 383 (1978). This clause was designed "to place the citizens of each State upon the same footing with citizens of other States, so far as the advantages resulting from citizenship in those States are concerned." *Friedman*, 487 U.S. at 64 (citing *Paul v. Virginia*, 8 Wall. 168, 180, 19 L. Ed. 357 (1869)). The clause does not apply to situations in which citizens are challenging the actions of their own state. *See id.* at 65; *United Bldg. & Constr. Trades Council of Camden v. Mayor of Camden*, 465 U.S. 208, 217 (1984) (holding that in-state residents have "no claim under the Privileges and Immunities Clause" of Article IV); *Zobel v. Williams*, 457 U.S. 55, 59 n.5 (1982) (finding that the Privileges and Immunities Clause of Article IV "was designed to insure to a citizen of State A who ventures into State B the same privileges which the citizens of State B enjoy"). In Texas, an independent school district is classified as a political subdivision of the state or a state agency, deriving its authority from the state. *See Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003); *see also San Antonio Indep. Sch. Dist. v. McKinney*, 936 S.W.2d 279, 286 (Tex. 1996) (noting that "[s]ixty-five years ago we unequivocally stated that Texas school districts are state

agencies . . . ."); *Barr v. Bernhard*, 562 S.W.2d 844, 846 (Tex. 1978) (finding that "[t]he law

is well settled in this state that an independent school district is an agency of the state . . . .").

As citizens of Texas challenging the actions of a political subdivision of their own state, Plaintiffs

have no recourse under the Privileges and Immunities Clause of Article IV.

Section 1 of the Fourteenth Amendment to the United States Constitution prohibits states

from making or enforcing laws which deny their citizens the privileges and immunities of national

citizenship. *See* U.S. CONST. amend. XIV, § 1. The Privileges and Immunities Clause of the

Fourteenth Amendment narrowly applies to national citizenship rights. *See Deubert v. Gulf Fed.*

*Savs. Bank*, 820 F.2d 754, 760 (5th Cir. 1987). The clause refers to federal rights such as the

right of citizens to vote in federal elections, to enter public lands, and to petition Congress. *See*

*id.* Therefore, the key inquiry is whether the privilege claimed is one that arises by virtue of

national citizenship. *See Friedman*, 487 U.S. at 64-65. In this situation, Defendants' alleged

actions have no bearing on any of the Mitchells' national citizenship rights, and hence, did not

deprive them of any federal privileges and immunities protected by the clause. Therefore, to the

extent Plaintiffs have asserted claims under the Privileges and Immunities Clause contained in

Article IV or the Fourteenth Amendment, such claims are without basis.

In sum, the Mitchells' constitutional claims fail as a matter of law because they have not

adduced adequate summary judgment evidence supporting alleged violations of their due process

rights, equal protection rights, or privileges and immunities under the United States Constitution.

First, because Defendants' conduct did not encroach upon Plaintiffs' fundamental rights, West

Brook's Co-op employer policy has a rational basis, and Mrs. Mitchell's life, liberty, or property

rights were not violated, Plaintiffs' substantive due process claims are not viable. Their

procedural due process claims, likewise, fail because the Mitchells suffered no life, liberty, or property deprivation.  Further, Plaintiffs' equal protection claims are without merit because they have not adduced sufficient evidence demonstrating that similarly situated, non-African-American students or parents were treated differently or that Defendants' actions were motivated by racially discriminatory animus.  Finally, Plaintiffs, as citizens of Texas, have no recourse under the Privileges and Immunities Clause of Article IV when challenging actions taken by a political subdivision of their own state, nor did Defendants' actions infringe on the protections afforded under the Privileges and Immunities Clause of the Fourteenth Amendment.

D.    Section 1983 Claims

In the case at bar, because no other federal laws are implicated, the Mitchells' § 1983 claims against Defendants can survive only if their underlying constitutional rights were abridged. *See Wood*, 420 U.S. at 326; *see also Sullivan*, 526 U.S. at 49-50; *Blessing*, 520 U.S. at 340; *Daniels*, 474 U.S. at 330; *Victoria W.*, 369 F.3d at 482 (citing *Bush*, 795 F.2d at 1209); *Priester*, 354 F.3d at 420.  In *Wood*, the United States Supreme Court explained:

> § 1983 does not extend the right to relitigate in federal court evidentiary questions arising in school disciplinary proceedings or the proper construction of school regulations.  The system of public education that has evolved in this Nation relies necessarily upon the discretion and judgment of school administrators and school board members and § 1983 was not intended to be a vehicle for federal-court correction of errors in the exercise of that discretion which do not rise to the level of violations of specific constitutional guarantees.

420 U.S. at 326.  Hence, because Plaintiffs have not shown that any constitutional violations occurred, they have failed to satisfy the threshold requirement in a § 1983 claim.  *See Oliver*, 276 F.3d at 744 n.10 (citing *Baker*, 443 U.S. at 140).  Consequently, summary judgment is warranted as to Plaintiffs' § 1983 claims.

Alternatively, Dr. Thomas, Ms. Cobb, and Officer Hobbs maintain that they are entitled to qualified immunity from Plaintiffs' claims.  In light of the Mitchells' failure to demonstrate a constitutional or statutory violation, the court need not consider Defendants' qualified immunity defense.  *See Estep v. Dallas County*, 310 F.3d 353, 367 n.6 (5th Cir. 2002); *Morin v. Moore*, 309 F.3d 316, 324 n.2 (5th Cir. 2002).   Further, it is unnecessary for the court to address Defendants' claim that Plaintiffs did not exhaust their administrative remedies.

E.    Mootness

In addition, Defendants argue that this case is moot.  Once a case or controversy is established, it may become moot "'"when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."'"  *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969))).  To sustain federal subject matter jurisdiction, a case or controversy set forth in the plaintiffs' complaint is required to remain "live" not only at the time it was filed but, throughout the litigation process, as well.  *See Rocky v. King*, 900 F.2d 864, 866 (5th Cir. 1990) (citing *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980)).  "An action is moot where (1) the controversy is no longer live or (2) the parties lack a personal stake in its outcome."  *Id.* at 867.

Defendants further point out that it is not the role of a federal court to second guess the decisions of school administrators in situations that the court might view as lacking in wisdom or compassion.  *See Wood*, 420 U.S. at 326.   "Local school boards have broad discretion in the management of school affairs."  *Jeffrey*, 261 F. Supp. 2d at 728.  Defendants also allude to the rather trivial nature of Plaintiffs' complaints.  In *Raymon v. Alvord Indep. Sch. Dist.*, the United

30

States Court of Appeals for the Fifth Circuit dismissed for lack of subject matter jurisdiction a high school student's claims brought under the Fifth and Fourteenth Amendments to the United States Constitution and under § 1983 seeking to increase her six-weeks grade by three points.  *See* 639 F.2d 257, 257 (5th Cir. 1981).   The *Raymon* court stated:

> Federal courts are proper forums for the resolution of serious and substantial federal claims.  They are frequently the last, and sometimes the only, resort for those who are oppressed by the denial of the rights given them by the Constitution and laws of the United States.  Fulfilling this mission and the other jurisdiction conferred by acts of Congress has imposed on the federal courts a work load that taxes their capacity.  Each litigant who improperly seeks federal judicial relief for a petty claim forces other litigants with more serious claims to await a day in court.  When litigants improperly invoke the aid of a federal court to redress what is patently a trifling claim, the district court should not attempt to ascertain who was right or who was wrong in provoking the quarrel but should dispatch the matter quickly.

*Id*.

Here, in 2005, Kierra remained in the Co-op course, continued with the same employer, completed the Co-op course with a grade of "A", graduated from West Brook, and applied and gained admission to Clark Atlanta University, the same college she planned on attending prior to the incident.  Further, at deposition, Dr. Mitchell conceded that he did not recall whether Kierra's Co-op grade impacted her acceptance into the university in any way.  In any event, Kierra "will never again be required to run the gauntlet" of the West Brook Co-op program, and her claims are not likely capable of repetition.  *DeFunis v. Odegaard*, 416 U.S. 312, 319 (1974).  Hence, at this point, Kierra's claims are arguably moot or, in any event, not sufficiently serious to warrant further attention by this court.

F.    State Law Claims

Federal court jurisdiction exists over an entire action, including state law claims, when the federal and state law claims "'derive from a common nucleus of operative fact' and are 'such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.'"  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349 (1988) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)); *accord Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 539 (2002).  Supplemental jurisdiction over state law claims, however, is a "'doctrine of discretion, not of plaintiff's right.'"  *City of Chicago v. International Coll. of Surgeons*, 522 U.S. 156, 172 (1997) (quoting *Gibbs*, 383 U.S. at 726); *accord Priester*, 354 F.3d at 425.  A district court may decline to exercise supplemental jurisdiction over a claim if the court has dismissed all claims over which it has original jurisdiction.  *See* 28 U.S.C. § 1367(c)(3); *accord Premiere Network Serv. v. SBC Commc'n, Inc.*, 440 F.3d 683, 692 (5th Cir. 2006); *Priester*, 354 F.3d at 425; *Heaton v. Monogram Credit Card Bank*, 231 F.3d 994, 997 (5th Cir. 2000), *cert. denied*, 533 U.S. 915 (2001); *Cabrol v. Town of Youngsville*, 106 F.3d 101, 110 (5th Cir. 1997) (citing *Cinel v. Connick*, 15 F.3d 1338, 1344 (5th Cir.), *cert. denied*, 513 U.S. 868 (1994) (citing *Gibbs*, 383 U.S. at 725)).  Consequently, a federal court must consider the provisions of 28 U.S.C. § 1367(c) and "weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims."  *Cohill*, 484 U.S. at 350; *accord International Coll. of Surgeons*, 522 U.S. at 172-73; *Smith v. Amedisys Inc.*, 298 F.3d 434, 446 (5th Cir. 2002); *Batiste v. Island Records, Inc.*, 179 F.3d 217, 227 (5th Cir. 1999), *cert. denied*, 528 U.S. 1076 (2000); *Cabrol*, 106 F.3d at 110; *Cinel*, 15 F.3d at 1344.

32

When federal law claims that serve as the basis for subject matter jurisdiction are dismissed and only state law claims grounded on supplemental jurisdiction remain, a district court has broad discretion to dismiss the state law claims. *See* 28 U.S.C. § 1367(c)(3); *International Coll. of Surgeons*, 522 U.S. at 173; *Cohill*, 484 U.S. at 349; *Gibbs*, 383 U.S. at 726-27; *Priester*, 354 F.3d at 425; *Heaton*, 231 F.3d at 997; *Brown v. Southwestern Bell Tel. Co.*, 901 F.2d 1250, 1254 (5th Cir. 1990). The Supreme Court has counseled that a court should decline jurisdiction "'if the federal claims are dismissed before trial.'" *Robertson v. Neuromedical Ctr.*, 161 F.3d 292, 296 (5th Cir. 1998), *cert. denied*, 526 U.S. 1098 (1999) (quoting *Gibbs*, 383 U.S. at 726). Moreover, in the Fifth Circuit, the "general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed." *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir. 1992) (citing *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989)); *see Premiere Network Serv., Inc.*, 440 F.3d at 692; *Batiste*, 179 F.3d at 227. The rule, however, is "'neither mandatory nor absolute.'" *Smith*, 298 F.3d at 447 (quoting *Batiste*, 179 F.3d at 227).

Here, the Mitchells' federal claims against Defendants are subject to summary judgment, leaving only their state law claims for defamation and IIED. In this situation, because the federal claims are being dismissed well before trial, the factors of judicial economy, convenience, fairness, and comity suggest that this court should decline to exercise jurisdiction over the remaining state law claims. *See Cohill*, 484 U.S. at 350; *Metro Ford Truck Sales, Inc. v. Ford Motor Co.*, 145 F.3d 320, 328 (5th Cir. 1998), *cert. denied*, 525 U.S. 1068 (1999). Consequently, Plaintiffs' state law claims asserting defamation and IIED will be dismissed without prejudice.

III.    Conclusion

Plaintiffs' constitutional claims under the Fifth and Fourteenth Amendments to the United States Constitution are without merit.    Plaintiffs' failure to adduce sufficient evidence demonstrating that constitutional violations occurred also dictates that their § 1983 claims not proceed as a matter of law.  Thus, Plaintiffs have not presented a federal claim warranting relief. Accordingly, Defendants BISD, Dr. Thomas, Ms. Cobb, Officer Hobbs, and all other unidentified parties' Motion for Summary Judgment is granted in part.  There remain no material facts in dispute on Plaintiffs' federal claims, and Defendants are entitled to judgment as a matter of law. Plaintiffs' state law claims are dismissed without prejudice because the considerations of judicial economy, convenience, fairness, and comity favor litigation of these claims in state court.

SIGNED at Beaumont, Texas, this 24th day of July, 2006.


_Marcia A. Crone_
_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE

34